Next case of this morning is number 20. Number 21, 20289. Number 20289. Mr. Bunker. Bunker, yes, ma'am. May I please report? Yes, sir. Counsel? I'm Joe Bunker. Joseph Bunker here for the plaintiff. Speak up. Yes, ma'am. Today I plan to address two issues that are seminal in this case. That the district court improperly applied race judicata under Texas law by not following Texas law, and that the plaintiff engaged in protected conduct by complaining, along with her co-workers, about the wage issues at the trial court level, I mean in the state court claim. The district court improperly applied Texas law under the transactional analysis of the third factor of race judicata, which addresses whether the claims of the state court case are the same as in this one. If the facts used to prove one claim are different from the facts required to prove another claim, then race judicata does not apply. In this case, in the state court claim, the plaintiffs in that case brought overtime, minimum wage, and tip claims. The overtime claims in the state court case depended on the plaintiffs proving that they worked more than 40 hours a week and were not paid time and a half for their work. The minimum wage claims depended on whether Tiger or May properly applied the tip credit and paid the tips required to the workers. And the tip claim, the theft of tip claim, the plaintiffs were required to prove that tips were not paid. The relief available in all three of those is the difference between what should have been paid and what was paid. So if they were paid less than minimum wage, less than time and a half, or less than their full tips, the relief is a difference in pay between what they should have. How was the proof made on that? Your Honor, through the weight of the proof is through the payroll records, tip records, and the credit card tip records that were produced in the state court. Were there any of these records that were the ones that your client took away from the restaurant? Yes, Your Honor. Those are records that were used to determine that the full amount of tips were not being paid to the plaintiffs in the state court claim. The facts are related chronologically, but the underlying transactions are different. One's a retaliatory firing claim and the other one's a theft of wages claim. That's your argument? Correct. I guess the twist that's a little difficult that I think they're focusing on is, by coincidence, she actually did join the two originally. So they're citing cases like citizen insurance that you can't join and then abandon and then reassert. Would you have a thought about that? Yes, Judge. In the state court case, there was actually no FLSA claim brought. There was a conversion claim, which isn't proper under Texas law because conversion has to do with stealing property, depriving one of the property, not money, and there's case law on that. Then on a breach of fiduciary duty, which is also not applicable because there's no fiduciary relationship between the parties. So there was actually no claim articulated when I took that case over that was even . . . there was no protected activity that could have been actionable that had been asserted in that case. Well, wait a minute. I thought you sued on the Labor Standards Act case in state court. I did when I took . . . I was the second lawyer on the case. The first case was brought by a gentleman who sued for conversion. Well, I guess my whole point . . . I mean, all I'm asking is you made your case and you reached a settlement, right, in state court? Correct. Okay. Yes, Your Honor. We settled the wage claims. Right. And the defendant wasn't interested in settling the retaliation claims, so we carved those out in the release. Again, the thrust of our argument is that under Texas law, if . . . and under federal law, actually, transactional approaches is applied in both federal and state law. If there is . . . if the facts are entirely distinct, as they are in this case, in the retaliation claim, finding liability depends on proving protected conduct and adverse action and a causal link. Do you have any case in the Fifth Circuit where . . . that's similar to this? I could not find anything in the Fifth Circuit. Well, the only one that our research uncovered, as far as I think, is an unpublished opinion of this court, and I'll cite it to you. Thanedar v. Time Warner, 352 . . . 352 Fed Appendix 891. Thanedar v. Time Warner. And that one says that a plaintiff couldn't have two successive claims or lawsuits where the first one, I think, was for . . . I think the first one was for some kind of discrimination in his termination, and the second one was for being a whistleblower under the Sarbanes-Oxley law, and the court applied the transactional test. We're not bound by unpublished opinions, but we do try to be consistent. My personal experience has always been that the people who bring these kinds of claims, and normally they're Title VII or fairly FMLA or something, plus retaliation, always do them in the same lawsuit. So I'm slightly perturbed by the idea that plaintiffs can go around splitting these claims. Let me address two of the things that you said. In the Thanedar v. Time Warner case, I have not read that case, but I can see the transaction there as being the termination and that you're making a claim under two different statutes for the same . . . Well, I mean, here you just conceded that your plaintiff used the records that she filched from the employer in order to prove the overtime case, and when she goes, if she were to go to trial on this retaliation claim, her argument, the question is motive. Is the motive that she was stealing documents, or is the motive that she was looking at things that were legitimate for concerning her wages? As far as the stealing documents, I mean, the individuals who actually, if they're stolen, stole those documents are the three cashiers who had access to the system. They have the ability to . . . she didn't have the ability to get these documents. She took them home. She did take them home. She did take them home, and they . . . So, I mean, I'm just saying as a practical matter, how can you try the case for the retaliation without getting into the facts about the documents that were purloined from the restaurant? I'm not accusing your client, but they went away from the restaurant, and your client had them, and they were integral to this other lawsuit. They were . . . those particular documents were . . . we received additional documents from the defendant with the same information on them. The documents that my client had were for two weeks' worth of time. During the course of the state court claim, we went back three years, and we got documents from the defendant for those three years. So, those documents really weren't themselves integral to the state court claim as much as the ones . . . Well, if she hadn't taken the records home, her claim would have been she might not have had grounds to file a lawsuit, right? Or it would have been a different lawsuit. Well, the workers were already complaining about getting shorter on their tips. I'm sure they were. And, the overtime claims and the minimum wage claims had nothing to do with those records, only as to the tip claims. The settlement for the state case had to do with more than her, right? How many people were involved? And, that's the other point I was going to make, Your Honor. There were seven individuals involved. How many were fired? One. My client was fired. And, so you solve it, and you carve out her, and the employer doesn't want to litigate it, because it says it doesn't have bad motive, retaliatory motive, but it's happy to pay the money they each are owed. Correct. Correct. And . . . When you said there's no case law, I thought you cited Anderson, Western District, Southern District, Northern District, Texas, all dividing these. Didn't get up to a circuit level, but I thought those did divide the wage theft from the improper termination. They did. And, there's a Western District case that specifically talked about retaliation being separate operative facts from the wage claims. There was a district court opinion from Judge Atlas in Houston . . . Right. . . . where she denied the defendant's motion to consolidate a retaliation claim brought in Houston with a wage claim arising from the same employer that the person was already a party to in the state of Washington. And, she said in that opinion that they have nothing in common. There's nothing in common between the retaliation, the facts of the retaliation claim and the facts for . . . Well, yeah, but you're always looking . . . I mean, that may be the case, but you are looking at the facts of the case. And, you don't have two different states involved here. No, you don't, Your Honor. I mean, the question here is not whether it had been permitted to bring the claim in the state court case. It would have been permitted. But, was it required? Was it mandatory? We had, in the state court case, we had seven individuals who all had claims for minimum wage, overtime, and tip claims. And, all of those claims depended on the same types of evidence and the same types of damages that were available. When you get to the retaliation claim, it's entirely different. The records themselves, whether they even had a minimum wage or overtime or tip theft claim, had nothing to do with whether there was a retaliation claim. So, you think the defendant . . . So, it's going to be irrelevant to the jury in this case, if we're to go to trial, as to whether she collected any money on the FLSA case? I don't think it's relevant. I don't know . . . You don't think you wouldn't even offer that evidence? I'm not the person who offered . . . I mean, the defense . . . I'm sure you would, because it would be your defense to retaliation. I looked at documents that were not secret, not trade secrets of any sort. I looked at them, and I saw that I was grossly underpaid. And, oh, by the way, ha, ha, ha, I got a bunch of money. I mean, you're not going to argue that to the jury. I don't think I would, actually, Your Honor. Why not? Because it doesn't matter. Well, of course it does. Okay. Okay. What matters is she got fired. She got fired for asserting her rights. And, I mean, whether she got fired for . . . If the case had gone nowhere, then you wouldn't have introduced everything. But when the case is pretty successful, $23,000 more, it's a pretty successful case, actually. Yes, Your Honor. And I'm just saying that that makes the retaliatory motive much stronger, doesn't it? On the part of the employer? Sure. Because they knew they were guilty, and they had to get rid of this person. Right. Yeah. Which, I mean, that gets us over . . . And that's what a retaliation case is about. Right. Okay. And, by the way, you waived oral argument here, but we very much appreciate your being willing to come over to New Orleans. Happy to be here. Always nice to come to New Orleans. Thank you. We don't do that very often, but there seemed to be a dearth of authorities that were certainly from this court. Yes, are there any state court cases, since we're dealing with state preclusion? I mean, there's no state court claim specifically having to do with the FLSA, because it's a . . . That's what I did as far as . . . Yes, Your Honor. But there was a federal case that Judge Hughes, the Duffy v. U.S., that he cited in his opinion. And in that case, it says, if a party can only win the suit by convincing the court that the prior judgment was an error, then the second suit is barred. If they have to be . . . I mean, that's the federal standard, but it's also the transactional standard. So the question is, is there . . . Again, is there any interrelation between the facts necessary to prove the claims in the state court case and the claims in the federal court case? And other than the identity of Ms. Pimpanet and the identity of the defendants, there are no facts necessary to prove either liability or damages on her claims. Okay. Thank you. Mr. Raffo? May it please the Court and Counsel. The doctrine of res judicata is not a matter of just practice or procedure inherited from a more technical time than ours. It's a fundamental and substantive rule of law designed for public policy and private peace, which should be cordially regarded and enforced by the courts. Those are the late Justice Rehnquist's words from the 1981 Supreme Court case, Federated Stores v. Moti, and they properly encapsulate why res judicata is so important in this case. It is here to avoid needlessly duplicative litigation, and that's what we've got here.  former servers of Ty Gourmet filed suit under a variety of theories. Lack of overtime, wage theft, but as we also heard, wrongful termination. And that wrongful termination claim was later dropped in the amended petition. When the parties settled their case in the state court matter, appellant specifically asked for and got that carve out in the settlement agreement saying that she reserved the right to bring an FLSA retaliation claim later. But what was just as important is the settlement agreement was completely silent about the defendants waiving any defenses they had regarding that claim. And what was just as important is when you look at the order of dismissal, there was no carve out relating to the FLSA retaliation claim. This is the essence of res judicata, and Texas law rejects this kind of claim-splitting approach. What's your best case for that proposition? Well, two, Your Honor. But I would primarily rely on the Citizens Insurance v. Dockage case. It is 217 Southwest 3rd 430 from 2007. The Texas Supreme Court addressed the issue in the class action setting about whether claims which had been raised and then dropped later on could then be revived in another suit. And the court specifically said they could not. In fact, I guess the way I was looking at that, though, was, yes, the could-have-brought test exists, but antecedent to that is, is it the same subject matter? And I just still have a hard time thinking wage theft is pragmatically the same subject matter in terms of trial units as a wrongful termination case. And that would be an important question to address if it hadn't already been conceded by the appellant. In her original petition, she brought an unlawful termination claim. She pled all the facts relating to her unlawful termination. Right, she could have, but it doesn't make the transactions the same. To me, it seems chronologically, in origin, in motive. This isn't a sequence of connected different— she isn't re-litigating a wage theft case. She's got a totally separate issue unrelated to the other six servers. She gets fired. That's wrongful. It makes sense even, frankly, for your client. I don't want to litigate that in this. And we write the settlement. It's not going to be vexatious she gets to bring it. It's totally separate. It has to do with her and why she was fired. Well, that's correct, Your Honor, but they're inextricably linked because the evidence used by the appellant to prove her wage theft claim was then also alleged by her to be the cause of the retaliation. It's a nucleus of facts. It's not an elements test, right, between the two claims? Well, Your Honor, the federal courts use the federal test talking about the same nucleus of facts. Judge Duncan, last July, you gave us the test from Three Star Properties versus SED Holdings, and the three elements were related on when Texas law applies when a court determines the preclusive effect of a Texas judgment. So the test is a little different from the federal test, which I think Judge Hughes used in the district court case, but the result is the same either way. The three elements in the SED Holdings case are, number one, the prior final judgment is on the merits by the court of competent jurisdiction. That's not an issue here. We've got a settlement and a final judgment. Number two, the parties are identical. Again, not an issue. And so number three is the second action is based on the same claims or claims that could have been raised in the first action, and that's where we are. Because when you look at the original petition, she brought a wrongful termination claim. She alleged all the facts related to the wrongful termination claim, and you just heard her say yes, but that was under a state theory. But then in the amended petition, and you'll see that under ROA 219, she then dropped the wrongful termination claim but added FLSA claims. So at the moment she did that, she knew she had the opportunity to bring an FLSA retaliation claim. She split it off for whatever reason. It's a tactical reason. It's up to her. But at the moment she filed the amended petition, she dropped her retaliation claim and just kept and added in FLSA claims. At that moment, she achieved element three. She had the same claims, and she could have continued forward with those claims. She could have added the FLSA claims. There's something like nine months between the amended petition and the settlement, and it's unclear why she didn't raise the FLSA retaliation claim in state court. It was a tactical choice. She was entitled to do it. She put a carve-out in the settlement agreement, but that doesn't allow her to argue that res judicata does not apply in this case. The three elements are met. What we were talking about from the appellant's side is you heard her saying that the subject matter of the two claims are different, but the evidence being used would be the same. And you're right, Judge Higginson, we're not talking about a strict timeline, but what we're talking about is the sources of evidence used. Her main argument is, well, I was in these meetings, and at the time I was in these meetings, various employees raised these issues. The evidence, as you go into the record on appeal, talks about what kind of issues were raised, what kind of questions the appellant asked. She asked only two questions in the meeting. She said, how do you deduct tips per person, and do we get any deduction from the tip base of total sales? The point is this was not an FLSA-protected activity, because at this point in time Department of Labor regulations allowed tip pooling, and they allowed credit card charges to be deducted from tips. That understandably caused some confusion, but those questions by themselves are not protected activities. Those are honest questions asking how much is being deducted, not why are these deductions being made. These deductions can't be made. And she asked those questions. But most importantly, you can't establish an FLSA-protected activity because the Starnes v. Wallace case from this court in 2017 sets up the issue. Did the defendant retaliate because the plaintiff engaged in a protected activity? So you have to establish the causation there, and there's no causation here, because as we have seen from testimony of the defendant, the owner, Fum Swarn, and the restaurant manager at ROA-466, both of them said they did not understand why the appellant stole the sales reports. And then the appellant herself testified at ROA-466. She did not tell the owner of the restaurant that she stole the sales reports before she was fired. You can't impute that knowledge that simply isn't there. And the only argument the appellant had in that regard is this tortured chain, saying, well, we think that another server may have told the manager of the restaurant, and that's enough. But the manager of the restaurant is not the person who fired the appellant. These arguments might prevail in the eventual FLSA termination case, right? But these aren't really going to the res judicata issue. Correct, Your Honor, and we don't even need to go into the merits any further, frankly. The res judicata issue is dispositive of the case, and for judicial economy, we can stop right there. You know, we've talked about in our briefing the three reasons why we succeed on the merits, the protected activity, which we just got into, the lack of causation, which we also discussed a little bit, and thirdly, the reason for termination was legitimate. But those are briefed. Those are before the court. And I would also ask the court, if you're going to reach the merits, that I ask that you actually review the affidavits and the evidence that was relied on by the appellant in her summary judgment motion. We made objections to hearsay to a number of those affidavits. The objections are preserved at ROA 359, 385 through 395, and 461 through 462. They were not ruled on by the district court because they didn't need to be ruled on. The court ruled entirely on res judicata. This court can simply affirm the trial court's decision and leave it there. It really goes back to what the Texas Supreme Court said in the citizen's insurance case. It said it is time to bring an end to litigation, time to prevent vexatious litigants, a time to maintain the stability of court decisions, a time to promote judicial economy, and a time to prevent double recovery. And that's all we're asking this court to do. If there are no further questions from the court, I will yield the rest of my time. All we simply ask the court to do in this matter is to affirm the trial court. I mean, the company would defend on the basis that she took documents away from the company, right? And that's why she was fired? That is correct, Your Honor. And we've cited a number of evidence of why those sales reports were so important. Right. Okay. Thank you. Thank you. Okay. Mr. Bunker. Yes, Your Honor. Address counsel's citations to Citizen's Insurance Company v. Doc Ock from the Supreme Court of Texas.  Yes, Your Honor. As Judge Higginson pointed out a few minutes ago, and what seems to get lost in the argument from the defendants in this case sometimes is that the first step is that there has to be an identity of claims, an identity of facts. And that's what we don't have here. The claims are contained within the same statute, but they're two totally different claims. They have two totally different motivations. The wage claims were over a period of years. The termination claim was one day. And as I already discussed previously, all of the evidence required to prove the wage claims is distinct and different. The relief is entirely different from between the wage claims and the retaliation claims. As far as public policy goes, one of the main thrusts of public policy of race judicata is to prevent a double recovery, which is not something that's going to happen in this case because the damages are entirely different. And again, just because Ms. Pimpanit could have brought the claim in the state court doesn't mean she was required to bring it. You didn't even cite citizens' insurance in your briefing. That was the . . . I didn't. They did. Okay. I'm just pointing it out. The other side said it. I know that. I cited the bar, which is the . . . Right. I know you cited bar. I mean, in bar, the Supreme Court wrapped up years of confusion in Texas about race judicata and adopted a transactional approach. Well, what it mainly says is it's a transactional approach. Right. But, you know, what would you do with a case where plaintiff sues the other side for breach of contract and breach of fiduciary duty, and they settle contract, and he reserves fiduciary duty, and then he sues them again for fiduciary duty? If the fiduciary duty claim arises out of the same . . . out of the contract or out of the duties that arise under the contract, then it would be barred. But it might not, right? I'm having a hard time thinking of a circumstance where it wouldn't. Because that's what we were talking . . . that's what the case . . . I don't mean to go down a rabbit trail. No, no, no. But the case that the defendant relied on, Robinson v. Garcia, in a Texas appellate court case, involved malpractice by an attorney, or alleged malpractice by an attorney, and the malpractice had to do with the settlement of the claims. And the lawyer advised the client to characterize the proceeds a certain way for the IRS, and allegedly took more than the contingency that had been contracted for between the parties. Years of different spinoff litigation, the claims settled, and a similar carve-out, and I think this is why the defense used it at the district court, similar carve-out for the negligence claims after . . . no, for one of the claims. But in that case, the lawyer specifically gave notice to the client, the client's attorney, that he intended to rely on the defense of race judicata if they proceeded with the second lawsuit. And so the court in that case went to more of an equitable approach, and said that there's no inequity to preclude a second claim based on race judicata under those circumstances. And if I may very quickly address something that Mr. Ravel had begun to talk about, is that the argument that the owner of the restaurant did not know anything about the complaints being made is false. My client's declaration, the record, pages 451 to 452, she was in that meeting, and she said if you don't like how things are going here, then you can just go somewhere else. Okay. Thank you very much. Thank you.